Paul M. Skrmetti and Thelma Skrmetti v. Commissioner.
Skrmetti v. Commissioner
Docket No. 80546.
United States Tax Court
T.C. Memo 1963-194; 1963 Tax Ct. Memo LEXIS 148; 22 T.C.M. (CCH) 941; T.C.M. (RIA) 63194; July 23, 1963
*148 Held: (1) Petitioners realized taxable income from real estate transactions in the years 1955 and 1956 in the amounts determined. (2) Petitioners have not established that they sustained a loss on the sale of the Skrmetti Building in 1955. (3) Petitioners are not liable for additions to tax in 1955 and 1956, under section 6653(a), I.R.C. of 1954, for negligence or intentional disregard of rules and regulations; and (4) Petitioners are liable for an addition to tax under section 6651(a), I.R.C. of 1954, for failure to file their return for 1956 within the time required. Paul M. Skrmetti, Box 527, Biloxi, Miss., pro se. Robert G. Faircloth and Frederick T. Carney, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined deficiencies in income taxes and additions to tax against the petitioners for the years 1955 and 1956 as follows: Additions to Tax,
I.R.C. 1954
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1955
$1,403.18
$70.16
1956
1,507.19
$63.65
75.36
By amendment to answer filed herein respondent claims an additional deficiency in income tax and additions to tax for the year 1956, as follows: Additions to Tax,
I.R.C. 1954
Year
Deficiency
Sec. 6651(a)
Sec. 6653(a)
1956
$703.51
$35.17
$46.89
The *149 issues presented are: (1) Whether and to what extent petitioners realized additional taxable income from real estate transactions in 1955 and 1956; (2) whether petitioners sustained a loss on the sale of the so-called Skrmetti Building in 1955 and, if so, in what amount; (3) petitioners are liable for additions to tax in 1955 and 1956 under section 6653(a) of the Internal Revenue Code of 1954 for negligence or intentional disregard of rules and regulations; and (4) whether petitioners are liable for an addition to tax in 1956 under section 6651(a) of the Internal Revenue Code of 1954 for the late filing of their return for that year. Findings of Fact Petitioners are husband and wife residing in Biloxi, Mississippi. They filed joint returns for the calendar years 1955 and 1956 with the district director of internal revenue at Jackson, Mississippi, on April 12, 1956, and May 23, 1957, respectively. An extension of the time within which the return for 1956 might be filed was granted to May 15, 1957. Thelma Skrmetti is a party hereto only by reason of having filed a joint return. Paul Skrmetti will hereinafter be referred to as petitioner. Petitioner was in the real estate business during *150 the years 1955 and 1956. On his return for 1955, petitioner reported a loss in the amount of $7,302.97, computed as shown by the schedule attached thereto as follows: Total Profit from Sale
$11,650.00
Expenses: Interest Paid
$11,497.17
Advertising
606.61
Automobile Expenses
3,258.96
Telephone
401.47
Architect
692.40
Legal Expense
1,806.36
Travel Expense
690.00
Total Expenses
$18,952.97
Loss:
$ 7,302.97 On his return for 1956, petitioner reported adjusted gross income in the amount of $3,950.17, computed as shown by the schedule attached thereto as follows: Sale of Real Estate:
COST
NET
Bennett Sale Price ($8500.00) (Discounted Note $1000.00)
$3,000.00
$ 4,500.00
Jackson County Property (Sale Price $5,000.00) (Discounted
Note $400.00)
1,400.00
3,200.00
Bailey 6 lots $5,400.00
2,100.00
4,300.00
Pooll
350.00
$12,350.00
EXPENSES: Land and repairs
$4,197.46
Telephone, Gas, Electricity
1,003.29
Stationery & Blue Prints
217.54
Legal Services
1,095.00
Automobile Expense
1,886.54
8,399.83
$ 3,950.17
Petitioner's returns for the years 1955 and 1956 were examined by an agent of the Internal Revenue Service, his report thereon, as indicated in the notice of deficiency, being dated November 20, 1958. At the time of his examination no books *151 of original entry or subsidiary records, such as invoices and receipts, kept and maintained by petitioner, were available, and such cancelled checks and work papers as were furnished by petitioner were inadequate and insufficient to form a basis for the computation of petitioner's taxable income. Petitioners' residence, together with the furnishings and personal effects of the petitioners, was destroyed by a fire in 1957. In the absence of adequate records of the petitioner the agent resorted to public records, records of suppliers of materials and certain work papers submitted by petitioner, for the purpose of computing petitioner's taxable income for the years involved. The notice of deficiency relating to the taxable years 1955 and 1956 was mailed to petitioners on March 6, 1959. The following schedules attached to the notice of deficiency are explanatory of respondent's determination of the net profit received by petitioner from the sale of real property and commissions in each of the years involved: YEAR 1955
STATEMENT OF PROFIT AND LOSS
Real Estate Sales: Gus Welbat
$ 500.00
U.S. Government
15.00
Robert A. Bennett
$11,500.00
Cost
3,000.00
8,500.00
Moody Grishman
4,000.00
Cost
0
4,000.00
Venus
2,500.00
Deal C. Paloi
400.00
Gross Profit
$15,915.00
Expenses: Car Expense & Depreciation
$ 1,886.54
Telephone
361.32
Advertising
606.61
Legal Expense
1,806.36
Property Taxes
311.64
Lights & Gas
83.59
Travel
690.00
Total Expenses
5,746.06
Net Profit
$10,168.94
YEAR 1956
STATEMENT OF PROFIT AND LOSS
Real Estate Sales: Houses and Lots: Robert C. Krohn
5/23/56
$10,000.00
Bennie R. Ramsey
(Rainey)
5/23/56
10,000.00
William J. Reeves
5/23/56
10,000.00
Edward C. Pearcy
6/ 6/56
9,500.00
Erman B. Hagood
9/ 6/56
7,250.00
Simon B. Fleming
9/ 6/56
10,000.00
$56,750.00
Less: Cost of Houses
$42,000.00
Cost of Lots
2,100.00
44,100.00
Gain
$12,650.00
Deal C. Paloi
350.00
Jackson County: Lots
5,000.00
Cost
1,400.00
Notes Discounted
400.00
1,800.00
Gain
3,200.00
* Less: Discount Taken Sale of Bennett Note
( 350.00)
Gross Profit
$15,850.00
Expenses: Telephone
341.49
Lights & Gas
155.96
Stationery & Blue Prints
217.54
Legal Services
1,095.00
Car Expense & Depreciation
1,886.54
Property Taxes
445.79
4,142.32
Net Profit
$11,707.68
*152 The sale to Gus Welbat in 1955 involved a 9.6 X 110 ft. parcel which was a part of a 43-acre tract purchased by petitioner in 1948 at a total cost of $63,000. In determining petitioner's profit on this sale respondent allowed no deduction for cost on the assumption petitioner had recovered the cost of the entire 43 acres from prior sales of portions thereof. The allocable cost of this parcel to petitioner was $35.46. The sale to the U.S. Government in 1955 also involved a portion of the 43-acre tract and was apparently a portion of a right-of-way. The quitclaim deed given the U.S. Government contained no description of the property sold from which the allocable cost to petitioner can be ascertained. The warranty deed (hereinafter discussed) by which the sale to Robert A. Bennett was made in 1955 shows the consideration therefor was $8,500, of which $850 was paid in cash and $7,650 was represented by note secured by a vendor's lien retained bearing interest at the rate of 5 percent per annum, payable $100 per month covering both interest and principal, beginning February 1, 1956, until paid. Petitioner discounted the note $350 in 1956. At the trial and on brief respondent *153 has conceded that the cost of the property sold to Moody Grishman in 1955 was $3,000. Petitioner received commissions from the sale of real property in 1955 on behalf of Venus and Deal C. Paloi in the amounts of $2,500 and $400, respectively. Total expenses incurred by petitioner in his real estate transactions for the year 1955 were $5,746.06, the amount allowed by respondent in the notice of deficiency and not questioned by petitioner. Petitioner realized a net profit from the above mentioned real estate transactions in 1955 in the amount of $4,133.48. In 1956 petitioner sold six houses constructed by Bailey Lumber Company on lots owned by petitioner as follows: Purchaser
Sales Price
Robert C. Krohn
$10,000
Bennie R. Rainey
10,000
William J. Reeves
10,000
Edward C. Pearcy
9,500
Erman B. Hagood
7,250
Simon B. Fleming
10,000
Total
$56,750 The cost of construction was $42,000 and the cost of the lots was $2,100. Petitioner realized a profit thereon in the amount of $12,650. Petitioner sold an undisclosed number of lots to Jackson County in 1956, for a total consideration of $5,000. Cost of the lots to petitioner was $1,400 and a note received as part of the consideration was discounted $400 by petitioner. *154 He realized a net profit thereon in the amount of $3,200. Petitioner received a commission from the sale of real property in 1956 on behalf of Deal C. Paloi in the amount of $350. As previously indicated, in 1956, petitioner discounted a note received by him in 1955 upon the sale of real property to Robert A. Bennett to the extent of $350. Total expenses incurred by petitioner in his real estate transactions for the year 1956 were $4,142.32, the amount allowed by respondent in the notice of deficiency. [1]
Petitioner realized a net profit from the above mentioned real estate transactions in 1956 in the amount of $11,707.68. In 1953 and 1954, petitioner constructed the so-called Skrmetti Building. The land on which the building was located consists of Lot 1 of Block 47, Lot 1 of Block 50, and a part of Lot 2 of Block 50, of Greater Biloxi Subdivision. This property is located between U.S. Highway *155 90 on the north and the Mississippi Sound (Gulf of Mexico) on the south. The north end borders U.S. Highway 90 to the extent of 95.2 feet. The west side is 237.8 feet; the east side 253.2 feet; and the south end is 95.2 feet. The northern portion which borders U.S. Highway 90 was purchased by petitioner for $14,500. The remaining portion of the lot or lots on which the Skrmetti Building was constructed, being a portion of the 43-acre tract purchased by petitioner in 1948 at an average cost of $1,465 per acre, cost approximately $659.25, making the total cost of the land on which the Skrmetti Building was constructed $15,159.25. The Skrmetti Building is approximately 183.7 feet by 95.2 feet. In addition to the construction of the building itself, petitioner constructed certain retaining walls and filled a certain portion of the land. The size or extent of the retaining walls and the amount of dirt or other material required for the fill have not been established nor can they reasonably be estimated. Petitioner has failed to establish by any competent evidence the cost of the building, the cost of the retaining walls or the cost of the fill, nor has he furnished competent evidence from *156 which any of said costs can reasonably be estimated. Petitioner sold the Skrmetti Building and land on which it was constructed in 1955. In addition to the tract of land on which the building was located, petitioner also conveyed a second tract of land which from the description thereof was apparently separated from the Skrmetti Building tract by Azalea Street. No evidence has been produced as to the cost of this tract or from which a reasonable estimate of the cost thereof can be estimated. The deed (hereinafter discussed), conveying these two tracts and the Skrmetti Building recites a consideration of "Ten Dollars ($10.00) cash in hand paid, and other good and valuable considerations." Attached thereto are Internal Revenue documentary stamps in the total amount of $141.90 ($0.55 per $500) indicating the total amount of the consideration received for the property conveyed was $129,000. No part of the deficiencies in tax for the taxable years 1955 and 1956 was due to negligence or intentional disregard of rules and regulations. Petitioner's failure to file the return for 1956 within the time prescribed therefor as extended was not due to reasonable cause but was due to willful neglect. *157 Opinion Notwithstanding repeated suggestions by three different judges of this Court, on occasions when this case came before the Court for trial or hearing on motions, that he should employ counsel familiar with the applicable laws, procedural requirements and rules of evidence, petitioner insisted upon trying the case himself. Consequently, the record is confusing, unintelligible, and wholly lacking in many material respects. In view of these circumstances, we have examined the record with the utmost care and made our findings to the best of our ability from the record as presented. In the absence of adequate records of the petitioner, respondent's agent resorted to public records, records of suppliers of materials, and to some extent to work papers and cancelled checks furnished by petitioner, for the purpose of computing petitioner's taxable income for the years involved. In the case of the sale of real property, where the public record of the conveyance failed to state the full consideration received by petitioner, respondent's agent testified he computed the consideration from the documentary stamps attached to the deed, allowing $0.55 for each $500, or fraction thereof, of consideration. *158 Section 4361, Internal Revenue Code of 1954. Respondent's determination of the deficiencies and additions to tax set out in the notice of deficiency is presumptively correct and petitioner has the burden of overcoming this presumption by competent evidence and testimony. Petitioner also has the burden to establish by clear and convincing evidence, the amount of loss, if any, which he claims to have sustained upon the sale of the Skrmetti Building. The mere statements of the petitioner as to his recollection or estimates of amounts received and paid out by him, unsupported by adequately-kept and maintained books of accounts, or by other available records, is not sufficient to sustain petitioner's burden of proof. With respect to the additional amounts claimed by respondent in his Amendment to Answer, however, the burden of proof is upon the respondent. Rule 32, Rules of Practice of the Tax Court of the United States. We have chosen not to rest our conclusions herein, respecting the deficiencies in income tax of the petitioner for 1955, on petitioner's failure to overcome the presumptive correctness of respondent's determination, but rather upon the evidence presented by the record *159 as a whole. Our reason for so doing is that, as shown by our findings of fact, respondent's determination has been found incorrect in respect to three of the sales made by petitioner in 1955. With respect to one of these, respondent has conceded at the trial and on brief that petitioner is entitled to a cost deduction in the amount of $3,000 for the property sold to Moody Grishman in 1955. With respect to the property sold to Gus Welbat in 1955, respondent allowed no deduction for cost on the assumption petitioner had recovered the cost of the entire 43 acres (of which the property sold to Welbat was originally a part) from prior sales. No showing was made, however, as to such prior sales or the amount of such cost previously recovered, and respondent's determination with respect to this sale is held to be incorrect. We have found as a fact that the allocable cost of the parcel sold to Welbat in 1955 was $35.46. We are unable to make a similar finding respecting the property quitclaimed to the U.S. Government, however, for want of a proper description, and in any event the amount would be de minimus. The third adjustment we have made to respondent's determination relates to the sale *160 to Robert A. Bennett in 1955. Respondent's agent testified he computed the consideration therefor from the amount of documentary stamps attached to the deed. No copy of the deed was filed at the trial by either respondent or petitioner. A certified copy of the deed has, however, been attached to "Petitioner's Answer to [Respondent's] Brief." In the interest of justice, rather than set the case down for further hearing, we will consider the trial reopened for the purpose of receiving, and we do hereby receive in evidence, the deed in question. This is a warranty deed made by petitioner to Robert Adam Bennett on December 31, 1955, and recites the consideration for the property conveyed as $8,500 rather than $11,500 as stated in the statement attached to the notice of deficiency, or $11,000 as stated in respondent's brief. Moreover, the documentary stamps attached thereto ($9.35) agree with the stated consideration. It is also to be noted that petitioner testified at the trial that the consideration for this conveyance was $8,500, but he did not at that time offer a copy of the deed in evidence. Petitioner has not questioned the amount of commissions determined as received by him from *161 Venus and Deal C. Paloi as set forth in the statement attached to the notice of deficiency, nor has he questioned the amounts allowed by respondent for expenses in the year 1955. Accordingly, we have found as a fact that petitioner realized profit from the above mentioned real estate transactions in 1955 in the net amount of $4,133.48. With respect to the income received by petitioner from the sale of real property and commissions for the year 1956, we have found the facts to be as determined by respondent and set forth in the statement attached to the notice of deficiency. Petitioner offered no competent evidence which would establish a different result. Respondent's agent testified he examined the public records of sales made by petitioner and from these determined the amount of the consideration. Included in these sales were six houses which had been constructed by the Bailey Lumber Company on lots owned by petitioner for the total amount of $42,000. Total cost of the lots was $2,100. Petitioner executed the deeds to the purchasers. As shown by the public records of such deeds, four of the hourses and lots were sold for $10,000 each, one was sold for $9,500, and one for $7,250, *162 making an aggregate of $56,750 received by petitioner upon the sale of these six houses and lots. Deducting the cost of construction ($42,000) and the cost of the lots ($2,100), petitioner's gain on the sale of such houses and lots was $12,650. In addition to the "Bailey" houses petitioner sold an undetermined number of lots to Jackson County in 1956 for the total amount of $5,000. The cost of the lots sold was $1,400 and petitioner discounted a note received in partial payment thereof to the extent of $400, leaving the net gain received by petitioner $3,200. In the same year (1956), petitioner also received $350 from Deal C. Paloi as a commission for the sale of real estate, and discounted a note, received by him in 1955 upon the sale of real estate to Robert A. Bennett, to the extent of $350. The gross profit received by petitioner from his real estate business in 1956 was $15,850. His total expenses, apparently not contested by petitioner, amounted to $4,142.32, and the net profit received by him in 1956 was $11,707.68. Respondent, by amendment to his answer filed herein, claims petitioner received an additional $2,750 as profit from the sale of real estate in 1956. He contends *163 that the consideration for the sale of one of the "Bailey" houses and lots to Erman B. Hagood was $10,000 rather than $7,250 as stated in the notice of deficiency and in support of this contention-offered in evidence a copy of the contract of sale and purchase entered into between petitioner and Hagood on May 15, 1956, wherein petitioner agreed to sell and Hagood agreed to purchase Lot 3 of Block 21 of the Greater Biloxi Subdivision for $10,000. Respondent's agent testified, however, that the amount shown in the notice of deficiency was the consideration shown by the deed of conveyance. Hagood was not called as a witness and, in our opinion, the contract of sale, dated May 16, 1956, is not sufficient, of itself, to contradict the consideration shown by the recorded deed of conveyance. Accordingly, respondent has failed to establish that petitioner received additional income upon the sale of the house and lot to Erman B. Hagood in 1956 in excess of the amount determined in the notice of deficiency. The second, and the principal, issue herein is whether petitioner sustained a loss on the sale of the Skrmetti Building in 1955 and, if so, in what amount. In his return for 1955, petitioner *164 claimed a business loss in the amount of $7,302.97, the difference between $18,952.97 claimed as business expense and $11,650 reported as "Total Profit from Sale." He did not at that time claim any loss on the sale of the Skrmetti Building. In his petition filed herein, however, petitioner alleged that his gross profit from the sale of real estate in 1955 was $7,235 and that his business expenses were $5,746, the amount determined by respondent in the notice of deficiency. He further alleged that he sustained a loss on the sale of the Skrmetti Building in 1955 in the amount of $114,590. Cost of constructing the building and pavement was alleged to be $188,000; the "value" of the land was alleged to be $75,000, from which there was deducted $18,410 as the "value" of land "kept" or retained; and the sale price was alleged to be $130,000. With respect to the land sold with the Skrmetti Building, it should first be pointed out that, for the purpose of determining the gain or loss upon the sale or other disposition of property, the basis of such property, with certain exceptions not here applicable, is the cost of such property (sections 1011 and 1012 of the Internal Revenue Code of 1954), *165 and not the fair market value thereof at the time of sale as erroneously assumed by petitioner. We have found the basis or cost to petitioner of the land on which the Skrmetti Building was located to be $15,159.25. The deed by which petitioner conveyed the Skrmetti Building was not offered in evidence at the trial by either of the parties. A certified copy has, however, been attached to "Petitioner's Answer to [Respondent's] Brief," and, as in the case of the Bennett deed heretofore mentioned, in the interest of justice, we will consider the trial reopened for the purpose of receiving, and do hereby receive in evidence, the deed dated May 13, 1955, from petitioner to W. P. Bridges, Jr., and J. B. Stokes. As this deed shows, in addition to the Skrmetti Building, and the land on which it is located, petitioner did in fact, as he testified at the trial, convey a second tract, which from the description thereof is apparently separated from the Skrmetti Building tract by Azalea Street. No evidence was produced, however, as to the cost of this tract and the description, being partly by courses and distances and partly by metes and bounds, is not sufficient for us to make an accurate estimate *166 of the amount of land contained therein, or the cost thereof, though if necessary to a decision herein, we might venture a guess that it contained approximately one-third of an acre and, assuming it was a part of the 43-acre tract heretofore mentioned, that its cost-basis was approximately $488.33. The principal difficulty with petitioner's contentions, however, is his almost complete failure to furnish competent evidence as to the cost of constructing the Skrmetti Building itself or of the retaining walls and land fill. Petitioner's testimony concerning these matters is confusing, unintelligible, and lacking in many material respects. It consisted principally of his recollections or estimates of the quantities and costs of materials and labor used. It was not supported by any records or books of account kept and maintained by him, nor by any invoices, receipts or identifiable cancelled checks. Nor did he offer the testimony of any of the suppliers of such materials and labor. In view of his failure to establish the cost of the building, land fill and retaining walls, we are compelled to hold that petitioner has failed to establish the amount, if any, of the loss sustained by him upon *167 the sale of the Skrmetti Building and land conveyed by him in 1955. The next issue is whether petitioners are liable for additions to tax in 1955 and 1956, under section 6653(a) of the Internal Revenue Code of 1954, due to negligence or intentional disregard of rules and regulations relating to the keeping of books of account or records. Petitioner's residence was destroyed by fire in 1957 along with the furnishings and many of his records. He testified he kept two files, one in one room and one in another, and that one of such rooms was completely destroyed. The agent's report of examination on which the notice of deficiency was based was dated November 20, 1958. The date he began his investigation is not shown. Although, with the exception of certain work papers and cancelled checks, petitioner did not produce any books of account or records of his business, we cannot say that the files which were destroyed by fire may not have been sufficient. We accordingly hold that petitioners are not liable for the additions to tax imposed by section 6653(a). The last issue is whether petitioners are liable for an addition to tax under section 6651(a) of the Internal Revenue Code of 1954, for *168 the late filing of their return for the year 1956. Petitioners were granted an extension of time within which to file their return for 1956 to May 15, 1957. The return was not filed until May 23, 1957, and petitioner has offered no evidence to show that the failure to file the return within the time as extended was due to reasonable cause. Under the circumstances, we hold that petitioners are liable for an addition to tax under the provisions of section 6651(a). Decision will be entered under Rule 50. Footnotes
*. [Illegible]↩
1. In his pleadings petitioner questioned the correctness of the amount allowed by respondent for property taxes. He offered no record evidence relating to this item at the trial and has not discussed it on brief. Accordingly, the correctness of respondent's determination of this item is sustained.↩